UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Willie Jackson )
2810 Sherman Avenue, N. W. )
Washington, D.C. 20001 )
)
)
)
       Plaintiff )
)
)
)
  v. )
)
MURIEL BOWSER, in her official capacity )
as Mayor of the District of Columbia, )
John A Wilson Building )
1350 Pennsylvania Avenue NW )
Suite 316 )
Washington, D.C. 20004 )
)
and )
)
The District of Columbia, )
a municipal corporation )
441 4th Street N.W. )
Washington, D.C. 20001 )
)
       Serve: Registered Agent )
       Tonia Robinson )
       Gayle Rivers )
       Marjorie Thomas )
       Regina Brown )
          441 4th Street )
          Suite 630 South )
          Washington, D.C. 20001 )
)
  Serve: Office of the Attorney General )
       C/O the Honorable Karl A. Racine )
       Attorney General for the )
       District of Columbia )
       441 4th Street, NW )
       Washington, D.C. 20001 )
       Email: oag@dc.gov )
)
and )
) Civil Action No:
) Jury Demand
)
)

| | |
|---|---|
| 2800 Sherman Avenue, LLC<br>c/o Steve Jacobson, Owner<br>4550 Montgomery Avenue, Suite 775<br>Bethesda, Maryland, 20814<br>    Serve: Registered Agent<br>        Russell S. Drazin<br>        4400 Jennifer Street, N.W.<br>        Suite 2<br>        Washington, D.C. 20015<br>and<br><br>Capital City Real Estate, LLC<br>1515 14th Street, N.W,<br>Washington, D.C. 20005<br>    Serve Registered Agent:<br>        Russell S. Drazin<br>        4400 Jennifer Street, N.W.<br>        Suite 2<br>        Washington, D.C. 20015<br><br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

for

**VIOLATION OF CIVIL RIGHTS**

**42 U.S.C.1983**

**NEGLIGENCE, TRESPASS, NEGLIGENT SUPERVISION OF EMPLOYEES, INVAISION OF PRIVACY AND DAMAGES**

**I.**

**INDRODUCTION**

1. This action arises out the violation of the Plaintiff's rights under the United States Constitution and Violation of Civil Rights guaranteed and protected by Title 43 U.S.C.1983et. seq. as a direct and proximate cause of the deliberate but unnecessary choice of the city's widespread and

pervasive "custom" and "policy" of its Washington D.C. Economic Partnership and the Mayor's Economics' Strategy.[1] In this specific case the construction of a multi-unit, multi-level residential apartment and condominiums s owned by the 2800 Sherman Avenue LLC. and construction by Capital City Real Estate, LLC at 2800 Sherman Avenue, N. W. Washington, D.C. The Plaintiff, Willie Jackson, the next-door neighbor and resident owner of 2810 Sherman Avenue, N.W. Washington, D.C. brings this action for Negligence, Trespass and Invasion of Privacy and for damages because of the ways and means by which the Defendants conducted their construction activities.

2. More specifically, the city through its revitalization efforts and economic renaissance has created, established, authorized and condoned the custom and practice of economically revitalizing the city. The effect and impact of the city's economic renaissance is that the city has condoned, established and engaged in a systematic pattern, custom and practice of affording low income, minorities and seniors inadequate protection and in many cases no protection from being displaced from their homes and lifetime neighborhoods. The poor, minority and low-income home owners and seniors are being forced to relocate and abandon their lifetime homes and neighborhoods in favor of the younger and economic affluent white middle and upper class. Builders and contractors, with city support and with the blessings of the Mayor of the District of Columbia swiftly move into city neighborhoods and move out the existing residents by destroying adjacent property and offering little or nothing for repairs

---

[1] In October 2013 Washington. DC was selected as one of the American Cities of the of the future for foreign investments by FDI Intelligence. The award was presented to the District of Columbia on October 7, 2013 at the IDE Annual Conference. According to Victor L. Hoskins, Deputy Mayor, D.C. Office of Planning and Economic Development "The Nation's Capital is one of the top world markets for foreign investment. Foreign Investors are attracted to DC by our real estate, as an entry point to the U.S. market, our international assets and increasingly as a residential destination and we expect interest from investors to continue because of the high potential return on investment achievable with a DC presence" This in a nutshell this wide spread DC "custom" and "policy" has become the single most moving and powerful force which has and is causing minorities, the poor and seniors to be forced from their homes and lifetime neighborhoods and thereby depriving them of precious Constitutional and federally protective rights.

and in the end, result is a building that none of these residents can afford, thus transforming the city of Washington D.C. into an elite and white owned paradise. These people who have lived in their homes for years simply can no longer afford to do so and are forced to relocate.

3. From 2007- 20014, the number of poor residents in DC increased by 18,000, with African Americans experiencing the largest increase. During this period, the poverty rate for the city's African Americans increased from 23 percent to 26 percent. Despite an overall increase in DC's median household income by approximately $10,000 dollars the median income household for African Americans remained flat during this period.
The median annual income for white families is $120,000.00 while it is $41,000.00 for African American families. Furthermore, white households have a net worth of 81 times greater than black households: $284,000 versus $3,500.00

Also, the African Americans have been constrained to a lack of business opportunities. African Americans, despite the city's economic revitalization policy have not been able to secure lines of credit to open and maintain small businesses, stores, dry cleaning services, restaurants and other outlets as their millennium white middle class counterparts.

According to a 2016 Report from the D.C. Policy Institute to afford rent in D.C. without spending 30 percent of one's income on housing, a renter would be required to earn more than $30 dollars an hour or more than 2.4 times D.C' s $12.50 per hour minimum wage.

The disparity between the incomes between older and minority residents and newer residents who tend to be white. younger. more affluent, and highly educated continues to widen. The increasing housing cost continue to skyrocket by individual investors and DC government-led efforts in partnership with

outside developers and government "custom" and "policy" has promoted the demolition of public and low-income housing and invested in "redevelopment" creating "mixed-income housing in more affluent neighborhoods. These efforts were created in 1992 and involved the use of DC and Federal Housing Opportunities for People Everywhere (HOPE VI).

This program gains wide spread DC Government "Custom" and "Policy" support deliberately chosen, despite the availability of more equitable options which would economically empower current minority, poor and senior residents using tax incentives and other creative financing strategies, thus having the availability to choose other more productive options rather than pursuing the Constitutional demise of others. The current "custom" and "Policy" chosen by the District of Columbia and its mayors have been chosen without just cause because punishes those who are "poor" "African American" and who are lower class seniors thus engaging in unconstitutional gentrification for the sole purpose of increasing tax dollars, under the pretext that the aim of this "policy" and "custom" is to address the issue of concentrated poverty within the inner city. but instead displaces low-income individuals through the loss of existing affordable units without one for one replacement. [2]

4. The Plaintiff in this action seeks judicial enforcement of his Constitutional and Federal Civil Rights and fights to save his home (and neighborhood) and encourages others to do so likewise.

5. It is the District of Columbia government's "policy" and "custom" that is the city's plan of "economic development and renaissance" which causes the Plaintiff, and others similarly situated, the deprivation of his rights,

---

[2] The District has seen job growth, a boom in the real estate market, and improvement of the overall economic conditions in the past decade. Yet according to Census data poverty rates continue to be persistently high in DC. Some 109,000 DC residents – or almost one in five – lived below poverty in 2012. Just over 7 percent of white, non-Hispanic, District residents lived below poverty, compared with 26 percent of Black, District residents and 22 percent of Hispanic residents. According to these numbers and DC "policy" the simple solution and DC trend "custom" is to move Hispanic and Black residents out of the city and move in more affluent whites.

privileges, or immunities secured by the Constitution and laws. The City's "Policy" and "Custom" i.e. the District of Columbia "economic development and renaissance" is itself precisely the moving force behind these constitutional violation, i.e. taking property without due process, denial of equal protection, and privileges and immunities. The actions by the city is so widespread and pervasive, as set forth herein, and as set forth by the Mayor on behalf of the District of Columbia and the by cyber media, demonstrates the link between the City's policy and the constitutional violations. For example the frequent trespasses, by employees of Defendant Capital City LLC urinating on Plaintiff's property, the use of Defendant's airlift over Plaintiff's property and over head of the Plaintiff and Plaintiff's friends without safety precautions and without proper city permits, refusal of police protection and on at least one occasion and agent or owner of Defendant Capital City LLC confronted Plaintiff on Plaintiff's property, pulled the no trespassing sign from the Plaintiff's property, broke it and threw the sign at the plaintiff and called the Plaintiff a racist and stated that he was a white man.

6. Defendants would not have acted in the manner as set forth by paragraph five in this complaint without the implied authority, or reasonable belief or expectation that they were acting with the consent and acquiesce of the Mayor on behalf of the District of Columbia.

7. The acts by the Defendants, as described herein, illustrate the cruel, mean and reckless indifference toward the Plaintiff's life and safety, the safety of Plaintiff's property inclusive of their specific acts which violate plaintiff's United States Constitutional Right to due process, equal protection, and were cruel and unusual but more importantly indicate the apparent support and implied authority granted by the city to these Defendants and their agents and employee, authorizing the commission of these acts in furtherance of the City's "policy" for its economic renaissance. Moreover, the city and the Mayor deliberately chose this course of action in alliance with it investors and contractors which are

Acquisition, Development, Construction and Sales and Construction as demonstrated by Defendants Capital City Real Estate LLC and 2800 Sherman Avenue LLC. Every project by every investor is completed with the encouragement and support and authorization of the District of Columbia forcing the existing residents to leave their homes and lifetime neighborhood and often homeless. The city has alternative choices to provide homes and residences to existing residents at affordable rates which would not violate the constitutional or civil rights of the poor, minorities and seniors previously residing in these neighborhoods but chose not to do so.

8. The Defendants failed to take adequate and safe precautions prior to conducting demolitions on their property thereby causing severe damages to Plaintiff's house to include the siding (stucco) chimney, fire wall, roof, furnace, inside walls etc.

9. Despite warnings and admonitions by officers from the District of Columbia Metropolitan Police Department, officers of the District of Columbia Consumer and Regulatory Agency, Defendants continued to allow their employee, agents and representatives to enter the Plaintiff's, urinate and commit other trespasses, interrupt plaintiff's right to the private and quiet enjoyment of his property and altered property boundaries thereby decreasing the amount of Plaintiff's property.

10. Defendants had a duty to act, with or under the same or similar standard of care, which a reasonable person would act, to conduct all construction activities, including the supervising of its employees. Defendants violated their duty to the Plaintiff because they failed to conduct their construction activities and did not supervise its employees in accordance with the appropriate standard of care which a reasonable person would have adhered to in the same or similar circumstance which resulted in the proximate cause of Plaintiff's damages.

II.

JURISDICTION

11. This action is brought pursuant to 42 U.S.C. 1983, 1985 (2)(5)1986, and 1988; 28U.S.C. 1331, and 1334(1) (2) (3) (4) and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, and 28U.S.C. 1343(3)(4). Plaintiff further invokes the pendant jurisdiction of the court to consider the claims arising under state law.

12. The Amount in Controversy, exclusive of interest and cost exceeds the sum of ($50,000.00) Fifty Thousand Dollars.

13. Each Defendant acted jointly and severely in concert and severally and individually and under the authority and color of state law to deprive the plaintiff of his Civil Rights Unites States Constitutional Rights and rights that are afforded to the Plaintiff pursuant to the laws, rules and regulations of the District of Columbia.

14. Plaintiff is entitled to have his federal claims litigated in the federal court along with the pendant and ancillary state or nonfederal claims since all claims arose out of the same transaction. Therefore, jurisdiction is proper in the United States District Court for the District of Columbia. Supplemental jurisdiction exists over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367

15. On the 31st day of May 2018 the Mayor of the District of Columbia was properly served pursuant to Section 12-309 of the District of Columbia.

III.

**VENUE**

16. Venue is proper because all material acts, events and or omissions giving rise to this action occurred in the District of Columbia therefore venue is proper pursuant to 28U.S.C. 1391 (b)(2)

IV

**PARTIES**

17. Plaintiff, Willie **Jackson** was and always relevant hereto was and is a resident and citizen of the District of Columbia.

12. Defendant, The Honorable Muriel Bowser, is Mayor of the District of Columbia and has as her principal place of business, the John A. Wilson Building, 1350 Pennsylvania Avenue N.W. Suite 316, Washington, D.C. Because of city policy, custom and practices private contractors and builders have been allowed, and in fact, encouraged to build and displace the homes and residences of the poor, minorities and seniors from the city of Washington, D.C.
The Mayor is sued in her official capacity

13. Defendant, DISTRICT OF COLUMBIA GOVERNMENT, and at all times relevant hereto, is a Municipal Corporation and has its principal place of business located at 441 4th Street N.W. N.W. 6th Floor, South, Washington D.C. 2001 and has as its registered Agents, Tonia Robinson, Gayle Rivers, Marjorie Thomas and Regina Brown at 441 4th Street, N.W. Suite 630 South, Washington, D.C. 20001

The District of Columbia (District), a municipal corporation empowered to sue and be sued, is the local government for the territory constituting the permanent seat of the government of the United States. The District is represented by and through its chief legal officer, the Attorney General for the District of Columbia. The Attorney General has general charge and conduct of all legal business of the District and all suits initiated by and against the District and is responsible for upholding the public interest. D.C. Code § 1-301.81(a)(1).

14. Defendant **Capital City Real Estate, LLC** always relevant herein, was the Construction Company and Contractor of the adjacent property identified as 2800 Sherman Avenue, LLC adjacent to Plaintiff's property at 2810 Sherman Avenue, N.W. Washington, D.C. 20001 and was the agent and or employee of the Defendant herein identified as 2800 Sherman Avenue, LLC.

15. Defendant **2800 Sherman Avenue, LLC**, was and always relevant herein the owner of 2800 Sherman Avenue N.W. Washington D.C. was in privity with and authorized the acts of the defendant Capital City Real Estate. LLC complained herein.

## V
## Violation of Civil Rights
## 43 U.S.C.1983

## FOURTEENTH AMMENDMENT

16. Plaintiff realleges paragraphs one through sixteen and incorporates by reference each paragraph as through as fully set forth.

17. The actions of the Defendants deprived the Plaintiff of his constitutional right to equal protection of the laws. Defendants used an administrative classification and policy that manifest itself in a discriminatory treatment violative of the equal protection clause

18. The official policy or custom was the moving force of the Plaintiff's constitutional violation. The Defendant's deliberate choice to follow this course of action as opposed to less drastic alternatives were the result of the city's public disclosure of its pervasive and wide spread practices within the District of Columbia and the agents and employees of the Defendant 2800 Sherman Avenue, LLC and the Defendant Capital City Real Estate, LLC in their unconstitutional and disrespectful conduct toward the Plaintiff would not have occurred but for the appearance of the implied and apparent consent and authorization and of the Mayor and officials acting on behalf of the District of Columbia.

    Consistent with the Mayor's publicly announced economic city revitalization and economic development plans and objectives, Defendants have partnered and cooperated with city officials such as the District of Columbia Office of Planning and Zoning for the construction of 1701 H Street, D.C. Department of Housing and Community Development for 1700 Euclid Condos, the Department of Housing and Community Development, D.C. Board of Zoning Adjustments .CCR for the Girard Street at 2800 Sherman Avenue, N.W. Columbia Heights, Washington, D.C. and all their activities within the District of Columbia

The Policy and Custom of the District of Columbia's Renaissance and Economic Development and the City's Economic Development Act was clearly the motivating and moving force which caused the Defendants 2800 Sherman Avenue LLC and Capital City Real Estate, LLC to deprive the Plaintiff of precious constitutional rights.

While violating the Plaintiff's Constitutional and 1983 Civil Rights these Defendants were simply moving forward and carrying out the economic agenda of the Mayor on behalf of the City. [3]

## VI.
## TRESPASS

19. Plaintiff incorporates paragraphs one through eighteen of this Complaint as though fully set forth and alleged herein.

20. Plaintiff by operation of law and other public records is vested with ownership and the present possessory right to control property trespassed, including the right to exclude others thereby giving the Plaintiff a legally recognized interest

21. Despite repeated admonitions from the local police and city officials including the Plaintiff himself the Defendants willfully and deliberately and with extreme malice and indifference engaged, authorized and allowed their agents and employees the unauthorized entry onto Plaintiff's property resulting in the interference with the Plaintiff's possessory interest.

---

[3] One might easily discern that the City's Economic Development agenda is certainly an enhancement to the Mayor's personal and political career.

22. As a result of the direct and proximate cause of the Defendants unwanted and unauthorized intrusion onto the Plaintiff's land, plaintiff was denied the full use of his property, the right of quiet enjoyment, suffered extreme emotional harm and mental anguish, public and private humiliation, sleepless nights, physical rashes from a nervous condition, damage to his home, loss of property due to Defendant's relocation of property lines as set forth by the attached exhibits.

23. One example of Plaintiff's humiliation by the Defendants to include Defendant's indifference and disregard to the rights and physical and emotional regard of the Plaintiff is their continuous trespass and urination on Plaintiff's property. See also Plaintiff's attached Exhibit.

## VII.
## INVASION OF PRIVACY

24. Plaintiff incorporates paragraphs one through twenty-three of this Complaint as though fully set forth and alleged herein.

25. Since the Plaintiff was/is legally entitled to the private and exclusive possession of his privately owned and occupied land Defendants' unwanted and unauthorized use and intrusion was an invasion of Plaintiff's personal and private use and enjoyment of his property to which Plaintiff is entitled.

26. As a further result of Defendant's unwarranted intrusion, malice. extreme, reckless and indifference Plaintiff suffered emotional, possessory, and economic damages and personal harm due to Defendant's demolition, and

physical access to Plaintiff's land, including damage to sidings on the house, roof, furnace, basement walls, and other undetermined damage.

## VIII
## NEGLIGENT SUPERVISION OF EMPLOYEES

27. Plaintiff incorporates paragraphs one through twenty-six of this Complaint as though fully set forth and alleged herein.

28. At all times relevant herein the Defendant's employee was acting under the direction, and within the course and scope of Defendant's employment and pursuant to the rules, regulations and policies of the Defendant employer

29. Defendant's employees acted in contravention to their duty of care to the Plaintiff, Willie Jackson, because of the Defendants negligent, careless, indifference and failing to properly train, supervise, control, direct, and monitor their work, and overall behavior including in their duties and responsibilities.

30. As a direct and proximate cause of the willful, wanton, malicious and intentional acts, omissions of Defendant's employees and agents and the negligent supervision of its employees by the Defendants the Plaintiff suffered serious mental anguish, humiliation and embarrassment, personal injury and damages because of Defendant's construction, demolition, trespass, and negligent supervision

## IX
## NEGLIGENCE

31. Plaintiff incorporates paragraphs one through thirty of this Complaint as though fully set forth and alleged herein.

32. Defendants owed a duty to the Plaintiff to exercise and adhere to the degree and standard of care of those engaged in the similar conduct and the activity of construction and demolition.

33. The Defendants breached its duty of care owed to the Plaintiff because they failed to exercise that degree of care according to the standard normally exercised by those engaged in the industry of construction and engaged in demolitions.

34. Defendants performed soil compaction approximately 7 to 8 feet away from the Plaintiff's house to fill a void from the removal of underground tanks.

35. Standard practice is to place the soil in lifts and compact with a vibratory roller. Or tamper.

36. The damage to Plaintiff's home is consistent with a structure that has undergone excessive vibration such as the damage and severe cracking to the stucco on the Plaintiff's house, the roof, cracking to the masonry, and severe damage to the chimney rendering the chimney a fire hazard.

37. As a direct and proximate cause of Defendant's excessive vibration during the course of their construction to the adjacent property was a Breach of Duty owed to the Plaintiff because the Defendant failed to exercise that degree of ordinary care according to the standard care normally adhered to by those engaged in the same industry of the Defendants, the Plaintiff

suffered shame, humiliation, embarrassment, mental anguish and emotional and physical harm, damage to his roof, siding and stucco on the house, damage to the house chimney, flue, cracks in the inside of the house walls, and continues to suffer other possible damages and personal injures because of Defendants' negligent construction and demolition.

## X
## RECKLESS ENDANGERMENT

38. Plaintiff incorporates paragraphs one through thirty-seven of this Complaint as though fully set forth and alleged herein.
39. The operation of an air lifted crane over the Plaintiff's head and over the head of Plaintiff's guest, while on the Plaintiff's private property, by Defendant 2800 Sherman Avenue LLC and Defendant Capital City Real Estate, LLC, including their authorized agents and employees was reckless, with indifference and without regard to the life or safety of the Plaintiff or Plaintiff's guest and was done with malice in reckless endangerment and without due regard the safety and lives of those persons underneath.

40. The operation of a crane over the Plaintiff's head and over the head of Plaintiff's guest, while on the Plaintiff's private property, by Defendant 2800 Sherman Avenue LLC and Defendant Capital City Real Estate, LLC, was operated by these Defendants, their agents, employees, and or their authorized contractors with the knowledge, acquiesce and consent of the District of Columbia as a direct and proximate cause of the issuance of a license and permit issued by the District of Columbia to the Defendants to conduct the operation of the crane and airlift overhead of the Plaintiffs and Plaintiff's guest while sitting on his private property during the day on Sunday on or about April 22, 2018. (See Attached Photo)

41. As a direct and proximate cause of the willful, wanton, malicious and reckless endangerment of Defendant's acts including their intentional acts of indifference to the life and safety of the Plaintiff including the Plaintiffs friends and neighbors, Plaintiff suffered serious mental anguish, humiliation and embarrassment, personal injury and damages because of the way, means and manner by which the District of Columbia permitted and authorized the operation and use of this air lifted crane over head and with out safety precautions.

42. The foregoing has the effect and impact of diminishing the value of Plaintiff's Property without just cause or due process and may very well be in violation of Policies and Standards by the Housing and Urban Department and the Federal Housing Administration.

43. Such cause and effect places Plaintiff in a specific area in this inner-city neighborhood such as would render it impossible to obtain a loan or insurance due to redlining thereby further depriving Plaintiff of his due process, and Equal Protection, Fifth and Fourteenth Amendment) Privileges and Immunities (Article IV, Section 2, Clause 1) guaranteed by the United States Constitution and Civil Rights. (42 U.S.C.1983 et. Seq.)

44. The District of Columbia has authorized and Defendant's 2800 Sherman Avenue LLC and Defendants Capital City Real Estate have deliberately and with malice and in further reckless disregard to the Plaintiff's safety established a wooden fence thereby land locking Plaintiff denying him access to leave his property from the rear to an area of easement of more than 25 years there by further recklessly endangering the life and safety of the Plaintiff in the event it becomes unsafe to leave the front of the house due to fire or natural disaster or some other tragedy.

**WHEREFORE,** Plaintiff demands judgment as follows:

1. One Billion Dollars ($1,000,000,000.00) against the District of Columbia and the Mayor in her official capacity on behalf of the District of Columbia, jointly and severely due to Reckless Endangerment and the threat of loss of life.
2. Three Hundred and Fifty Thousand Dollars ($350,000.00) for Trespass against Defendants 2800 Sherman, LLC and Capital City Real Estate LLC
3. Three Hundred and Fifty Thousand Dollars ($350,000.00) for Invasion of Privacy against Defendants 2800 Sherman, LLC and Capital City Real Estate LLC
4. Three Hundred and Fifty Thousand Dollars ($350,000.00) for Negligent Supervision of Employees against Defendants 2800 Sherman, LLC and Capital City Real Estate LLC
5. Three Hundred and Fifty Thousand Dollars ($350,000.00) for Negligence against Defendants 2800 Sherman, LLC and Capital City Real Estate LLC
6. Three Hundred and Fifty Thousand Dollars ($350,000.00) Mental Anguish and Emotional Harm against Defendants 2800 Sherman, LLC and Capital City Real Estate LLC
7. One Billion Dollars ($1,000,000,000.00) for Punitive Damages against Defendants 2800 Sherman, LLC, Capital City Real Estate LLC and the District of Columbia.
8. One Hundred and Fifty Thousand Dollars ($150,000.00) Legal Fees
9. Injunctive and Equitable Relief
10. Such other and further relief as deemed and necessary by the court.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Superior Court Rules of Civil Procedure, Plaintiff Willie Jackson demands a trial by jury of all issues so triable as of right.

Dated: June 9, 2018

Respectfully,

*Ronald C. Hill*

Ronald C. Hill
Bar # 114116
10905 Ft. Washington Road
Suite 201
Ft. Washington, Maryland 20344
(240)346-9092

ATTACHMENT

I

PERSUANT TO PARAGRAPH 40

