# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WILLIE JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-1378 (KBJ) |
| | ) | |
| MURIEL BOWSER, *in her official* | ) | |
| *capacity as Mayor of the District of* | ) | |
| *Columbia*, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

As a longtime resident of the District of Columbia, plaintiff Willie Jackson has

seen new construction projects transform District neighborhoods. One such project hit

particularly close to home on March 15, 2015, when Defendants 2800 Sherman Avenue,

LLC ("2800 Sherman") and Capital City Real Estate, LLC ("Capital City")

(collectively, "the Private Defendants") began constructing on a new multi-unit

residential building next door to Jackson's house. (*See* Am. Compl., ECF No. 6, ¶ 11.)

Jackson claims that over the next three years, the Private Defendants' employees

engaged in tortious conduct against him and his property, and that they joined together

with Defendants Mayor Muriel Bowser and the District of Columbia (collectively, "the

Public Defendants") in a collective and concerted effort to displace longtime African-

American and poor District residents and replace them with younger, more affluent,

white residents. Jackson brings this lawsuit alleging that Defendants' conduct violated

his constitutional rights and the common law.

Before this Court at present are three motions that the parties filed in this matter: the Private Defendants' motion to dismiss Jackson's amended complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) (*see* Priv. Defs.' Mot. to Dismiss Am. Compl. for Failure to State A Claim Upon Which Relief May Be Granted ("Priv. Defs.' Mot."), ECF No. 7); the Public Defendants' motion to dismiss under Rule 12(b)(6) and motion for partial summary judgment (*see* Pub. Defs.' Mot. to Dismiss Pl.'s Am. Compl. & Mot. for Partial Summ. J. ("Pub. Defs.' Mot."), ECF No. 8); and Jackson's motion for summary judgment (*see* Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 18).  On March 29, 2019, this Court issued an Order that **GRANTED** both the Private Defendants' and the Public Defendants' motions to dismiss (thereby dismissing Jackson's lawsuit), and **DENIED** Jackson's motion for summary judgment as moot.  (*See* Order, ECF No. 24.)  This Memorandum Opinion explains the reasons for that Order.  In short, the Court concluded that Jackson's amended complaint fails to allege sufficient facts to support a plausible claim that Defendants violated his constitutional rights, and given the insufficiency of Jackson's federal claim, the Court further declined to exercise pendent jurisdiction over Jackson's state common law claims.

## I.     BACKGROUND

### A.     Basic Facts[1]

Jackson has owned his home in Washington, D.C., for almost thirty years.  (*See*

---

[1] The facts recited herein are drawn from Jackson's amended complaint and are accepted as true for the purpose of the Court's analysis of Defendants' motions to dismiss.  *See, e.g.*, *Suarez v. Colvin*, 140 F. Supp. 3d 94, 99 (D.D.C. 2015).

Am. Compl. ¶ 26.)  On or about March 25, 2015, Defendant Capital City began construction on a "multi-unit, multi-level residential apartment and condominium" building that Defendant 2800 Sherman owned, and that happened to be located next door to Jackson's home.  (*Id.* at ¶ 1; *see also id.* ¶ 11.)  According to Jackson's complaint, defendants District of Columbia and Mayor Bowser caused 2800 Sherman and Capital City to construct the building, at least in part, because Bowser and the District "created, established, authorized and condoned the custom and practice of economically revitalizing the city."  (*Id.* ¶ 2.)  Indeed, Jackson alleges that "[e]very project by every investor is completed with the encouragement and support and authorization of the District of Columbia[.]"  (*Id.* ¶ 7.)  The amended complaint is unclear as to the scope and contours of the alleged District policy of economic revitalization, but it asserts that the policy originated as early as 1992.  (*See id.* ¶ 3.)

According to the amended complaint, throughout the three-year period during which construction took place next to Jackson's home, Capital City employees trespassed on Jackson's property; urinated on his land; pulled a no-trespassing sign from his property, broke it, and threw it at him; and called Jackson a racist.  (*See id.* ¶ 5.)  Capital City also allegedly used a crane to airlift materials over Jackson's property and over the heads of Jackson and a guest "without safety precautions and without proper city permits" (*id.*), and otherwise "failed to take adequate and safe precautions prior to conducting demolitions on [2800 Sherman's] property thereby causing severe damages to [Jackson's] house" (*id.* ¶ 8).  The construction also allegedly "altered property boundaries thereby decreasing the amount of [Jackson's] property."  (*Id.* ¶ 9.)  Furthermore, according to the amended complaint, 2800 Sherman and Capital

City would not have committed these violations "without the implied authority, or reasonable belief or expectation that they were acting with the consent and acquiescence of the Mayor on behalf of the District of Columbia." (*Id.* ¶ 6.)

Jackson's amended complaint further alleges that, through the District's economic revitalization policy, the Mayor and the District "ha[ve] condoned, established and engaged in a systematic pattern, custom and practice of affording low income, minorities and seniors inadequate protection and in many case no protection from being displaced from their homes and lifetime neighborhoods." (*Id.* ¶ 2.) Specifically, "[t]he poor, minority and low-income home owners and seniors are being forced to relocate and abandon their lifetime homes and neighborhoods in favor of the younger and economic[ally] affluent white middle and upper class." (*Id.*; *see also id.* (asserting that "[b]uilders and contractors, with city support and with the blessings of the Mayor of the District of Columbia[,] swiftly move into city neighborhoods and move out the existing residents by destroying adjacent property and offering little or nothing for repairs . . . result[ing] [in] a building that none of these residents can afford, thus transforming the city of Washington[,] D.C.[,] into an elite and white owned paradise")). To bolster this contention, the amended complaint includes various data about median income levels for different racial groups in the District, as well as allegations about the difficulties of affording housing in the city. (*See id.* ¶ 3.) The amended complaint further maintains that all of the alleged "unauthorized acts were a joint enterprise" between 2800 Sherman and Capital City, on the one hand, and Mayor Bowser and the District, on the other. (*Id.* ¶ 25.)

### B.    Procedural History

Jackson initiated the instant lawsuit on June 11, 2018. (*See* Compl., ECF No. 1.)

On July 28, 2018, Jackson filed the operative six-count amended complaint (*see* Am. Compl.), and both the Private Defendants (2800 Sherman and Capital City) and the Public Defendants (Mayor Bowser and the District) responded with motions to dismiss, on August 8, 2018, and August 13, 2018, respectively (*see* ECF Nos. 4, 5).

The first count of Jackson's first amended complaint alleges that Defendants have violated Jackson's civil rights under the United States Constitution. In this regard, Jackson specifically invokes "28 U.S.C. 1983," "Equal Protection[,]" and the "Fifth Amendment[.]" (*Id.* at 12; *see also id.* ¶¶ 29–37 (Count I).)[2] Elsewhere in his complaint, Jackson references sections 1985 and 1986 of Title 42, as well as the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. (*See id.* ¶ 12.) Counts II through VI of Jackson's complaint allege that both sets of Defendants have committed various common law tort violations that have injured him. Specifically, Jackson accuses Defendants of trespass (*see id.* ¶¶ 38–42 (Count II)); invasion of privacy (*see id.* ¶¶ 43–45 (Count III)); negligent supervision of their employees (*see id.* ¶¶ 46–49 (Count IV)); negligence (*see id.* ¶¶ 50–56 (Count V)); and intentional infliction of emotional distress (*see id.* ¶¶ 57–62 (Count VI)). To remedy all of the alleged violations, Jackson seeks monetary damages, punitive damages, and unspecified injunctive and equitable relief. (*See id.* at 21.)

On August 8, 2018, the Private Defendants filed a motion to dismiss Jackson's amended complaint (*see* Priv. Defs.' Mot.), and on August 13, 2018, the Public Defendants filed a motion to dismiss and for partial summary judgment (*see* Pub. Defs.'

---

[2] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

Mot.). In their motion to dismiss, the Private Defendants argue that they "are not state actors and [thus] cannot be held liable for constitutional violations" under Section 1983. (Priv. Defs.' Mem. in Supp. of Priv. Defs.' Mot. ("Priv. Defs.' Mem."), ECF No. 7-1, at 4; *see also id.* at 4–5.) They further argue that Jackson's amended complaint fails to provide "sufficient detail as to place the defendants on notice of his [common law] claims." (*Id.* at 5; *see also id.* at 5–6.) The Private Defendants also contend that "the complaint does not set forth facts sufficient to establish the sort of extreme or outrageous conduct needed to support a claim for intentional infliction [of emotional distress]." (*Id.* at 7; *see also id.* at 7–8.)

In their motion to dismiss and for partial summary judgment, the Public Defendants argue, first, that the claims against Mayor Bowser should be dismissed as duplicative of the claims against the District. (*See* Pub. Defs.' Mot. at 7.) In addition, they contend that Jackson's amended complaint fails to state a Section 1983 claim against the District for several reasons: (1) because "the Fourteenth Amendment does not apply to the District" (*id.* at 8); (2) because the amended complaint fails to allege any facts to support a claim that the District violated Jackson's First, Fourth, or Eight Amendment rights (*see id.* at 8–9); and (3) because not only does the amended complaint fail to allege "with any specifics the date of District misconduct which gives rise to its liability in this case or more specifically what polices caused [Jackson's] injuries" (*id.* at 11 (emphasis omitted)), but it is also "devoid of any facts showing that the District or its employees participated in any part of the constructions events that allegedly caused [Jackson's] injuries" (*id.* at 11–12).

With respect to Jackson's common law claims, the Public Defendants insist that

"the alleged misconduct was committed by employees of Defendant Capital City, not District employees[,]" and that Jackson "has not alleged the existence of any employer-employee relationship between the District and the Defendant Capital City's employees" and "has not alleged that Defendant Capital City was an independent contractor of the District." (*Id.* at 12.) The Public Defendants further argue that to the extent Jackson's common law claims stem from conduct occurring between March 25, 2015, and June 11, 2015, they are barred by the statute of limitations and are subject to dismissal on this basis alone. (*See id.* at 13.) The Public Defendants finally argue that the Court should enter judgment in favor of the District on Jackson's common law claims because the doctrine of sovereign immunity bars Jackson's negligent supervision claims against the District (*see id.* at 13–14); the public duty doctrine bars Jackson's negligence claims (*see id.* at 15–16); and section 12-309 of the D.C. Code, which contains mandatory notification requirements, bars all of Jackson's common law claims in light of his failure to provide adequate notice to the District (*see id.* at 16–18).

Jackson's responses to the arguments of the Private Defendants and the Public Defendants vary. As relevant here, Jackson asserts that the Private Defendants can and should be held liable under Section 1983 because they "partnered and cooperated with the District of Columbia and were the moving force behind the unconstitutional custom and policy of the Government of the District of Columbia and became the implied agent of the Government and had the Government's actual or apparent authority and consent[.]" (Pl.'s Opp'n to Priv. Defs.' Mot. ("Pl.'s Priv. Opp'n"), ECF No. 13, at 11.) Moreover, Jackson contends that the Private Defendants' common law notice arguments are "disingenu[ous] and lack merit, especially since the defendants are either aware or

in possession [of] and in some instances, have almost exclusive access to the very information they purportedly seek to obtain." (*Id.* at 9.)

In response to the Public Defendants' myriad contentions, Jackson argues that the claims against Mayor Bowser are not duplicative of those against the District because the Mayor "represents the municipal corporation of the District of Columbia[,]" and she is able to act in ways that a "fictitious person" cannot. (Pl.'s Opp'n to Pub. Defs.' Mot. ("Pl.'s Pub. Opp'n"), ECF No. 9, at 3.) Jackson also maintains that the amended complaint states a viable Section 1983 claim because the Fifth Amendment applies to the District (*see id.*), and "[t]he First[,] Fourth[,] and Eighth Amendments are Constitutional infringements suffered by the Plaintiff, and others similarly situated, because of the execution of the city's wide spread and pervasive 'custom' and policy." (*Id.*) Jackson further maintains that the defendants had an "intertwining and interlocking relationship" resulting in their "engag[ing] in an enterprise having its express purpose to deprive the Plaintiff and others similarly situated of their homes and liberty or freedom to remain in their life time homes and neighborhoods by engaging in an unorthodox activity of eminent domain." (*Id.* at 8.) And Jackson insists that he "brings this action based on constitutional deprivations pursuant to governmental 'custom' and 'policy' and 'practice' even though it has not received formal approval through the body's official decision making channels." (*Id.* at 10.) Finally, in defense of his common law claims, Jackson argues that the statute of limitations does not apply, and that he "complied with the six-month requirement of D.C. Code 12-309 because the Defendant[s'] acts [are] continuous and ongoing" (*id.* at 11) and because he has personally "complained to the District's Metropolitan Police Department on numerous

occasions." (*Id.*)[3]

After the parties fully briefed these motions, Jackson filed his own motion for summary judgment (*see* Pl.'s Mot.), which appears to reiterate arguments from the amended complaint and Jackson's oppositions to Defendants' motions to dismiss. (*See, e.g.*, Mem. in Supp. of Pl.'s Mot., ECF No. 18-2, at 6–7 ("[Jackson] contends that because of the intertwining and interlocking relationship between the Defendants that Defendants actively engage in an enterprise having as its express purpose to unconstitutionally deprive [Jackson] and others similarly situated of their homes and liberty or freedom to remain in their life time homes and neighborhoods by engaging in an unorthodox activity of eminent domain.").)[4] Jackson's summary judgment motion became ripe on January 2, 2019.

## II. APPLICABLE LEGAL STANDARD

### A. Motions To Dismiss Under Rule 12(b)(6)

A party may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that it "fail[s] to state a claim upon which relief can

---

[3] Jackson inserts new allegations of fact into his opposition to the Public Defendants' motion, including, for example, that he seems to bring the claim as a member of a class (*see* Pl.'s Pub. Opp'n at 8), and that he has suffered a stroke since filing this lawsuit (*see id.*). Jackson's opposition brief also provides additional details regarding the construction project next door to his home. (*See id.* at 9). "But it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss[,]" *Wagdy v. Sullivan*, 316 F. Supp. 3d 257, 263 (D.D.C. 2018) (internal quotation marks and citation omitted), and, as such, this Court will not consider allegations raised for the first time in Jackson's briefs in opposition.

[4] As with his opposition to the Public Defendants' motion, Jackson's summary judgment motion transcends the complaint's allegations by claiming that, since filing his lawsuit, Jackson has "suffered a stroke due to elevated blood pressure caused by stress from his unsafe home environment" and that "Defendant[s] continued to violate [Jackson's] common law, Constitutional and Civil Rights by continuing to enter [Jackson's] property against his will or consent." (Mem. in Supp. of Pl.'s Mot. at 6.) Jackson also attached to his motion for summary judgment numerous exhibits, in response to "Defendants['] contention that the complaint is vague and contains generalizations[.]" (*Id.* at 10.) Because the Court has decided to grant Defendants' motions to dismiss, it has not reached or reviewed this evidence.

be granted." Fed. R. Civ. P. 12(b)(6). To survive such a motion, a complaint must comply with Rule 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint must also "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted), *i.e.*, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Therefore, even though a complaint "'does not need detailed factual allegations,' the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 343 (D.C. Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In evaluating whether a complaint has managed to set forth sufficient factual allegations, a court must "accept the plaintiff's factual allegations as true and construe the complaint liberally, granting plaintiff the benefit of all inferences that can reasonably be derived from the facts alleged." *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 345 (D.C. Cir. 2018) (internal quotation marks, alterations, and citation omitted). Notably, this tenet "is inapplicable to legal conclusions[,]" *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), which means that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" *id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). When analyzing a motion to dismiss brought under Rule 12(b)(6), the court generally must limit its analysis to the four corners of the

complaint. *See Page v. Mancuso*, 999 F. Supp. 2d 269, 275 (D.D.C. 2013).

**B.     Section 1983 Actions And Municipal Liability**

Section 1983 of Title 42 of the Untied States Code "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017); *see also* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]").  "The alleged wrongdoer must have exercised power possessed by virtue of state law and made possible only through the authority of state law." *Miller v. Dist. of Columbia Water & Sewer Auth.*, No. 17-cv-0840, 2018 WL 4762261, at *12 (D.D.C. Oct. 2, 2018) (internal quotation marks, citation, ellipsis, and brackets omitted); *see also Amiri v. Gelman Mgmt. Co.*, 734 F. Supp. 2d 1, 3 (D.D.C. 2010) (dismissing Section 1983 claim for failure to state a claim where complaint failed to suggest that defendant was a state actor or acted in concert with the District of Columbia); *Amiri v. Kelting*, 356 Fed. App'x 423 (D.C. Cir. 2009) (affirming dismissal of the complaint where plaintiff "alleged no conduct by a state actor within the purview of 42 U.S.C. § 1983"); *Md. Minority Contractors Ass'n v. Lynch*, 203 F.3d 821 (4th Cir. 2000) (table) (affirming dismissal of a Section 1983 claim against a private company where the complaint did not allege that the company was extensively regulated by the state or that the company otherwise was a state actor).  "Section 1983's prescription that the defendant must be acting 'under color of state law' expressly applies to the

District of Columbia." *Miller*, 2018 WL 4762261, at *12; *see also* 42 U.S.C. § 1983 (listing "any State or Territory or the District of Columbia").

Municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Notably, a municipality "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91. Moreover, and significantly for present purposes, "a [S]ection 1983 claim against municipal employees in their official capacities is the equivalent of a suit against the municipality itself[.]" *Ryan v. Dist. of Columbia*, 306 F. Supp. 3d 334, 340 (D.D.C. 2018) (internal quotation marks and citation omitted).

Generally speaking, a prima facie case under Section 1983 "requires a showing that a person acting under the color of state law caused a deprivation of a constitutional right or federal law." *Sledge v. Dist. of Columbia*, 63 F. Supp. 3d 1, 26 (D.D.C. 2014) (citing *Monell*, 436 U.S. at 690–91). A plaintiff must satisfy two pleading requirements to allege *municipal* liability for a Section 1983 violation properly: "first, the plaintiff must establish an underlying constitutional violation; second, the plaintiff must show that there is a basis for municipal liability." *Page*, 999 F. Supp. 2d at 281.

With respect to the second prong (municipal liability), it is important to note that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory[,]" *Monell*, 436 U.S. at 691, because "a city can be held liable under Section 1983—either

directly or in its role as a supervisor of the employees who undertake unconstitutional actions—only when its *own* policy or custom inflicts the injury[,]" *Sledge*, 63 F. Supp. 3d at 27 (emphasis in original) (alterations, internal quotation marks, and citation omitted). Thus, in order to succeed on a Section 1983 claim against a municipality, "a plaintiff must demonstrate that a custom or policy of the municipality caused the violation[,]" *Ryan*, 306 F. Supp. 3d at 341 (internal quotation marks and citation omitted), which is ordinarily accomplished by identifying any one of four circumstances: (1) "the explicit setting of a policy by the government that violates the Constitution"; (2) "the action of a policy maker within the government"; (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom"; or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations[,]" *Blue v. Dist. of Columbia*, 811 F.3d 14, 19 (D.C. Cir. 2015) (internal quotation marks and citation omitted). Moreover, there must be an "affirmative link" between the municipal custom or policy and the violation of law that the plaintiff is alleging, "such that [the] municipal policy was the moving force behind the . . . violation[.]" *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

## III.    ANALYSIS

Jackson essentially maintains that the District of Columbia and its Mayor have acted in concert with private developers to push out poor and minority residents and replace them with young, affluent white people through a policy of economic

development and revitalization. For the reasons explained fully below, because Jackson's claims against the Mayor are duplicative of those same claims brought against the District itself, this Court has dismissed Mayor Bowser as a defendant in this case. The Court further concluded that the federal claims in Jackson's amended complaint must be dismissed as well, because the Private Defendants are not state actors, and because Jackson has failed to plead sufficient facts to support a plausible inference that a District policy or custom caused him to suffer a constitutional injury. And given its conclusion that Jackson has failed to plead a viable federal claim, this Court also opted not to exercise pendent jurisdiction over Jackson's remaining common law claims.

A.    **The Claims Against Defendant Bowser Are Wholly Duplicative Of The Claims Against The District Of Columbia**

When a plaintiff brings a claim against both a District of Columbia official in their official capacity and the District itself, the two claims ordinarily "merge[.]" *Cooke-Seals v. Dist. of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997) (emphasis omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." (internal quotation marks and citation omitted)); *Holmes-Ramsey v. Dist. of Columbia*, 747 F. Supp. 2d 32, 42 (D.D.C. 2010) (explaining that "claims against [District] Officials in their official capacities are effectively claims against the District"). As such, district courts may, and often do, dismiss the claim against the official as duplicative. *See, e.g.*, *Cooke-Seals*, 973 F. Supp. at 187; *Lawrence v. Dist. of Columbia*, No. 18-595, 2019 WL 1101329, at *7 (D.D.C. Mar. 8, 2019) ("Summary dismissal of duplicative official capacity actions is the overwhelming

approach that has been taken by members of this Court, as well as the position taken by other courts." (internal quotation marks and citation omitted)).

In the instant case, the Public Defendants have moved to dismiss Jackson's claims against Mayor Bowser, in her official capacity, as duplicative of Jackson's claims against the District. (*See* Pub. Defs.' Mot. at 7–8.) Jackson opposes this motion on the grounds that, "as the head of the District of Columbia[,] [Mayor Bowser] represents the municipal corporation of the District of Columbia[,]" which is "a fictitious person" that is "unable to respond to the various physical requirement[s] of a civil action such [as] production of documents and other discovery requests." (Pl.'s Pub. Opp'n at 3.) But Jackson's argument misunderstands the law as it relates to claims against municipalities, which need not be brought against an individual official in order to proceed. *See, e.g.*, *Monell*, 436 U.S. at 660–61 ("The gravamen of the complaint was that *the Board and the Department* had as a matter of official policy compelled pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons." (emphasis added)); *Parker v. Dist. of Columbia*, 850 F.2d 708, 710 (D.C. Cir. 1988) (affirming jury verdict on claims "only against *the District*" (emphasis added)). The amended complaint makes clear that Jackson's claims against individual defendant Bowser are identical to his claims against the District (*see generally* Am. Compl.), and as the Public Defendants note in their reply brief, Jackson "must look to the District for the relief sought in this official-capacity lawsuit against Mayor Bowser" (Pub. Defs.' Reply in Supp. of Pub. Defs.' Mot. ("Pub. Defs.' Reply"), ECF No. 14, at 1).

Therefore, it is clear to this Court that the claims against Mayor Bowser are duplicative of the claims against the District, and, consequently, the Court has exercised its discretion to dismiss Mayor Bowser from this action. *See, e.g.*, *Lawrence v. Dist. of Columbia*, 2019 WL 1101329, at *7 (dismissing claims against individual defendant sued in his official capacity when the District was also a defendant).

### B. Jackson Has Failed To State A Section 1983 Claim Against Either The Private Or Public Defendants

Jackson's complaint maintains that the District has a policy or custom of economic revitalization, and that this policy displaces African Americans, other minorities, and the poor, such that it operates as "a disguised and unwarranted version of eminent domain[.]" (Am. Compl. ¶ 34.) Jackson also appears to contend that the policy was the precipitating force behind the Private Defendants' commission of various torts against Jackson, and that these acts equated to takings without due process, in violation of the Fifth Amendment (*see id.* ¶¶ 36–37). Importantly, and as noted above, the federal claim in Jackson's lawsuit expressly and specifically alleges a "[v]iolation of [c]ivil [r]ights[,]" and the title of this count cites only three sources of law that Defendants' actions allegedly violate: "28 U.S.C. 1983," "Equal Protection," and "Fifth Amendment[.]" (Am. Compl. at 12; *see also* Pl.'s Pub. Opp'n at 3 ("Plaintiff stipulates that the Fourteenth Amendment is inapplicable to the District or its employees[.]").) Thus, this Court has construed Jackson's complaint as raising only a Fifth Amendment constitutional claim that is cognizable under 42 U.S.C. § 1983.[5] And

---

[5] Elsewhere in his pleading, Jackson cites to sections 1985, 1986, and 1988 of Title 42 of the United States Code, as well as the First, Fourth, Fifth, Eighth, and Fourteenth Amendments (*see* Am. Compl. ¶ 12), and he contends that "[t]his action is brought pursuant to" those provisions (*id.*). But such mere mentions are manifestly insufficient to provide sufficient notice that Jackson intends to claim violations

in this regard, this Court finds that Jackson has failed to plead a plausible Section 1983

claim against either the Private or Public Defendants, for the following reasons.

       1.     The Private Defendants Are Not State Actors And Thus Cannot Be
                Held Liable Under Section 1983

Because Section 1983 imposes liability only for unconstitutional or otherwise

unlawful *state* action, in order to make a plausible claim that the Private Defendants

should be held liable under that statute, Jackson must, as a threshold matter, show that

the Private Defendants' conduct qualified as state action.  It is well established that

"'[a] private individual acts under color of law within the meaning of section 1983

when he acts together with state officials or with significant state aid[,]'" *Arias v.

Dyncorp*, 517 F. Supp. 2d 221, 228 (D.D.C. 2007) (quoting *Kadic v. Karadzic*, 70 F.3d

232, 245 (2d Cir. 1995)), and "[a] challenged activity may be state action under

[Section] 1983 when the activity results from the State's exercise of coercive power,

when the State provides significant encouragement, either overt or covert, or when a

private actor operates as a willful participant in joint activity with the State or its

agents[,]" *id.* (internal quotation marks and alteration omitted) (quoting *Brentwood*

---

of these laws in addition to the ones he highlights in Count I.  *See Hunter v. Dist. of Columbia*, 534 F. Supp. 2d 70, 71 (D.D.C. 2008) ("[I]t is clear that mere references to statutes in a complaint without any allegations as to how these statutes were violated cannot meet even Rule 8's liberal requirement of 'a short and plain statement of the claim showing the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))); *see also Butler v. Cali. State Disbursement Unit*, 990 F. Supp. 2d 8, 9 (D.D.C. 2013) ("The purpose of the minimum standard of Rule 8 is to give fair notice to the defendants of the claim being asserted[.]")  And other than the property rights that Jackson suggests are protected by the Fifth Amendment, the amended complaint contains no *facts* to support his threadbare and conclusory general assertion of Defendants' violation of his constitutional rights. (*See, e.g.,* Am. Compl. ¶ 37 ("The District of Columbia refused to hear all pleas for help to city public officials and police thereby adversely affecting [Jackson's] [F]irst [A]mendment [right] to have [] meaningful free speech[.]")); *see also Anderson v. Gates*, 20 F. Supp. 3d 114, 125 n.10 (D.D.C. 2013) (dismissing First Amendment claims under Rule 12(b)(6) because the complaint failed to contain sufficient factual allegations to support them).  Therefore, this Court will treat the amended complaint as alleging only Fifth Amendment violations, and will not analyze any other constitutional claims.

*Acad v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

In their motion to dismiss, the Private Defendants argue that, although Jackson "did add a host of allegations that the [Private] Defendants cooperated with the District, that their actions were intertwined with the District's, that the Defendants were agents of the District's[,] and that the District somehow coerced the Defendants to act[,]" the complaint "sets forth *no* facts to support these allegations." (Priv. Defs.' Mem. at 2 n.2 (emphasis in original) (citing Compl. ¶¶ 22, 25, 26, 27, 35–36).) The Private Defendants argue further that, "at worst, [they] developed a property that fit into what the Plaintiff contends is the District of Columbia's vision for economic development" (*id.* at 5 n.15), and that "if all that were required to render contractors and developers state actors was approval of a building project, constitutional claims could be levied against any person or entity approved for any sort of construction permit, or any person denied any sort of benefit by a private entity that is regulated by any governmental agency" (*id.* at 4).

This Court agrees with the Private Defendants' analysis. The amended complaint is replete with the bald contention that the Private Defendants "partnered and cooperated with the District of Columbia and . . . became the implied agent of the Government" (Pl.'s Priv. Opp'n at 11), but Jackson points to no *facts* that would support these assertions (*see generally id.*; Am. Compl.). For example, Jackson does not allege that the District enacted legislation that anointed developers such as the Private Defendants with state-agent status, nor does he allege any facts that demonstrate that the District "had so far insinuated itself into a position of interdependence with [private developers] that it must be recognized as a joint participant in the challenged

activity[.]" *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172–73 (1972) (internal quotation marks and citation omitted). Such allegations are necessary to move Jackson's pleading from the realm of bare conclusory allegations (which are insufficient to survive a motion to dismiss) and into the arena of complaints that state a plausible claim. *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–43 (1982) (discussing four factors relevant to determining wheter private conduct qualifies as state action for purposes of Section 1983).

At most, Jackson's amended complaint maintains that the Private Defendants became "agents" of the District because they "were willingly given operating and zoning permits by the City Defendants[.]" (Pl.'s Priv. Opp'n at 12.) However, Section 1983 does not impose liability on a contractor who merely receives a permit from a state government, as the Private Defendants point out (*see* Priv. Defs.' Mot. at 4–5); *cf. Rendell-Baker*, 457 U.S. at 841 (noting that even where private contractors perform *public* contracts, "[a]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts").

Thus, the mere fact that the District issued construction permits to the Private Defendants does not, without more, allow this Court reasonably to infer that the Private Defendants were state actors for Section 1983 purposes, or that the Private Defendants willfully participated in a joint mission with the District such that they can rightly be viewed as having acted under color of state law. *See, e.g.*, *Emory v. Psych. Insts. of Amer.*, Civ. A. No. 89-2181, 1992 WL 333602, at *3 (D.D.C. 1991) (rejecting argument that plaintiff had established state action where defendant hospitals "operate under

licenses granted by the state and laws regulating such business" (internal quotation marks, citation, and brackets omitted)).

Jackson's amended complaint points to no other facts as a basis for its contention that the Private Defendants are state actors; therefore, it does not make a plausible allegation that they should be treated as such for purposes of Section 1983. As such, the Court must dismiss the federal claims against the Private Defendants.

      2.     <u>Jackson Has Failed To Identify Either A Constitutional Violation Or A District Of Columbia Policy Or Custom That Caused Such A Violation</u>

This Court further finds that the Section 1983 claim that Jackson has brought against the District fails, because the amended complaint does not allege sufficient facts to support a plausible claim that there was an underlying constitutional violation with respect to the events at issue, nor does the amended complaint adequately allege that a District custom or policy caused any purported constitutional violation. *See Coleman v. Dist. of Columbia*, 828 F. Supp. 2d 87, 90 (D.D.C. 2011) ("To state a claim for a [section] 1983 violation, [a plaintiff] must allege both 'a violation of [his] rights under the Constitution or federal law' and 'that the municipality's custom or policy caused the violations.'" (quoting *Warren v. Dist. of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004)).

To begin with, as explained in Part II.B above, a plaintiff who seeks to state a claim under Section 1983 must plausibly allege "a deprivation of a constitutional right or federal law." *Sledge*, 63 F. Supp. 3d at 26. Jackson repeatedly suggests that "the specific conduct complained of" with respect to both Defendants is that Jackson was "literally . . . forced out of his home and neighborhood" (Pl.'s Pub. Opp'n at at 4; *see also* Am. Compl. ¶ 36); however, the complaint's factual allegations do not support any inference that Defendants ousted him from his abode (*see, e.g.*, Am. Compl.

¶ 26 (alleging only that "[Jackson's] property was damaged, and not one penny was offered as compensation for repairs.  Moreover, [Jackson] faces a total loss of ownership of his property of almost thirty (30) years because of oncoming higher taxes and other associated expenses as a result [of] the combined and intertwined and inextricable operation of all the above captioned Defendants.")).  Nor has Jackson provided any legal support for the complaint's suggestion that the circumstances of the alleged deprivation amounted to a violation of constitutional or federal law.  *See Eagle Trust Fund v. United States Postal Serv.*, No. 17-cv-2450, 2019 WL 451350, at *4 (D.D.C. Feb. 4, 2019) ("[T]o state a claim for the denial of procedural due process, a plaintiff must allege that the government deprived her of a liberty or property interest to which she had a legitimate claim of entitlement, and that the procedures attendant upon that deprivation were constitutionally insufficient[.]" (internal quotation marks, citation, and alteration omitted)); *see also Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 215 (D.C. Cir. 2013) ("To prevail on an equal protection claim, the plaintiff must show that the government has treated [him] differently from a similarly situated party and that the government's explanation for the differing treatment does not satisfy the relevant level of scrutiny" (internal quotation marks and citation omitted)).

Put another way, the critical missing piece from Jackson's Section 1983 claims—which are premised on an alleged violation of the Fifth Amendment's due process clause (*see supra* n.5)—is any plausible contention that Jackson has, in fact, been deprived of a constitutionally cognizable liberty or property interest by virtue of the conduct described in the amended complaint, *see Eagle Trust Fund*, 2019 WL 451350, at *4, or that Defendants have treated him "differently from a similarly situated

party[,]" *Muwekma Oholone Tribe*, 708 F.3d at 215.  And without such allegations,

Jackson's amended complaint does not plead sufficient facts to support a plausible

claim that Defendants' conduct violated Jackson's constitutional rights.  *See, e.g.*,

*Ashbourne v. Hansberry*, 302 F. Supp. 3d 338, 349 (D.D.C. 2018) (dismissing

plaintiff's claim that government deprived her of a property interest "[b]ecause there

are no facts to support her allegation"); *Rodriguez v. Dist. of Columbia*, 118 F. Supp. 3d

132, 134 (D.D.C. 2015) (dismissing Section 1983 claim because "plaintiff has failed to

allege a deprivation of her constitutional rights to equal protection or due process").

    The amended complaint also falls far short of identifying a custom or policy of

the District of Columbia that can be faulted for any such constitutional violation.

Jackson's pleading is less than clear about which custom-or-policy category is at issue,

*see Sledge*, 63 F. Supp. 3d at 27 (reiterating that "[t]here are four basic categories of

municipal action a plaintiff may rely on to establish municipal liability" (internal

quotation marks, citation, and alteration omitted)), but Jackson seems to be alleging

either that the District has an *explicit* policy of economic revitalization that violates the

Constitution—*i.e.*, the "Washington D.C. Economic Partnership and the Mayor's

Economics' Strategy" (Am. Compl. ¶ 1)—or that the actions of a policymaker within

the government (*e.g.*, Mayor Bowser) with respect to revitalization initiatives are

impermissible under the Constitution or federal law (*see, e.g.*, Pl.'s Pub. Opp'n at 5

(asserting that the District's "'Custom' and 'Practice' of Economic Renaissance and

revitalization[] is in fact[] the Defendants' undisclosed method of publicly taking

property to benefit private persons and private investments"); Am. Compl. ¶ 19

("Because of city policy, custom and practices[,] private contractors and builders have

been allowed, and in fact, encouraged to build and displace the homes and residences of the poor, minorities, and seniors from the city of Washington D.C.")).[6]  The ambiguity regarding whether the complaint's allegations stem from an express District policy or a District official's practices is, alone, problematic from the standpoint of Rule 12(b)(6); and, indeed, neither the amended complaint nor Jackson's subsequent briefing fleshes out the contours of the alleged "policy" as it relates to Jackson's claim that the District's revitalization efforts have caused a violation of certain citizens' constitutional rights.  *Cf. Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 181 (D.D.C. 2017) (explaining in the Title VII context that plaintiffs may rely on disparate treatment or disparate impact theories of discrimination, but that even when relying on disparate impact, plaintiffs still must "show that the practice in question has *caused* the exclusion of applicants for jobs or promotions *because of* their membership in a protected group" (emphasis added) (internal quotation marks and citation omitted)).

In this regard, Jackson merely maintains that

> the Mayor and the local government have partnered with foreign investors and their contractors and created, designed and masterminded an enterprise to insidiously target minorities and poor residents in the Nation's Capital by building costly buildings in economically depressed African American neighborhoods and neighborhoods of the poor[,] thereby elevating property taxes[,] rendering lifetime homes and neighborhoods unaffordable[,] [and] forcing minority and poor residents to vaca[te] their homes.

(Pl.'s Pub. Opp'n at 2.)  But the amended complaint provides no allegations of fact that actually identify the alleged "enterprise," or that explain *how*, *why*, or *to what extent* the Public Defendants' economic revitalization initiatives are responsible for the

---

[6] The amended complaint does not elaborate on the content or contours of the "Washington D.C. Economic Partnership and the Mayor's Economics' Strategy."  (Am. Compl. ¶ 1; *see generally id.*)

displacement that Jackson contends is occurring, much less any facts that plausibly demonstrate that the District actually has a "policy" of "insidiously target[ing]" minorities and poor residents. *See Greater New Orleans Fair Housing Action Ctr. v. U.S. Dep't of Housing & Urban Dev.*, 639 F.3d 1078, 1085–86 (D.C. Cir. 2011) (explaining that "[w]hen presenting a disparate impact claim, a plaintiff must generally 'demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group'" (quoting *Garcia v. Johanns*, 444 F.3d 625, 633 (D.C. Cir. 2006))); *see also Palmer v. Homecomings Financial LLC*, 677 F. Supp. 2d 233, 241–42 (concluding that plaintiff's "disparate impact claim is deficient because it does not sufficiently plead a connection between the discretionary pricing policy and a disparate impact on a protected group").

To be sure, Jackson's pleading repeatedly asserts that the impact of the economic revitalization initiatives has been to force minority and poor residents out of various neighborhoods, but Jackson must do more than identify the alleged negative effects of an adopted municipal initiative to demonstrate plausibly that the District has knowingly adopted a "policy" of violating the constitutional rights of its citizens. *See, e.g.*, *Trimble v. Dist. of Columbia*, 779 F. Supp. 2d 54, 59 (D.D.C. 2011) (dismissing Section 1983 claim against municipality where plaintiff "does not name or identify the policies, practices, or customs, nor does she cite any incident other than the events alleged in her complaint that might provide a basis for concluding that MPD has any gender discriminatory policies, practices, or customs"); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (noting that to qualify as a "policy[,]" there must be "a 'deliberate' or 'conscious' choice by a municipality").

Therefore, this Court finds that Jackson's amended complaint fails to plead a plausible claim that the District has or had a custom or policy that targets minority residents and caused his constitutional rights to be violated, which means that the federal claims that Jackson has brought against the District must be dismissed.

### C.    Because The Amended Complaint Fails To Plead A Viable Federal Claim, This Court Declines To Exercise Supplemental Jurisdiction Over The Remaining Common Law Claims

The remainder of Jackson's claims are state common law claims.  While it is true that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy[,]" 28 U.S.C. § 1367(a), "[a] district court, in its discretion, may choose not to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction[,]" *Trimble*, 779 F. Supp. 2d at 60 (quoting 28 U.S.C. § 1367(c)).  When deciding whether or not to exercise supplemental jurisdiction in such a scenario, "a court must balance considerations of judicial economy, convenience, fairness, and comity[,]" and, generally, "if all federal law claims have been dismissed, the factors counsel against exercising supplemental jurisdiction." *Id.*

Having dismissed Jackson's federal claims, this Court further finds that there is no basis for its continued exercise of jurisdiction over the state common law claims. "[This] case has not progressed beyond defendants' first motion, and the Court has not developed any familiarity with [Jackson's] state-law claims." *Deppner v. Spectrum Health Care Resources, Inc.*, 325 F. Supp. 3d 176, 191 (D.D.C. 2018).  Moreover, it appears that the Court's dismissal of Jackson's common law claims will not prejudice the parties, because "[section] 1367(d)'s tolling provision not only provides for a thirty-

day grace period for refiling in state court after dismissal; it also stops the clock on any otherwise-applicable limitations period during the pendency of the federal-court suit." *Id.* And Jackson has not identified any other fairness concerns that would warrant the exercise of supplemental jurisdiction under the circumstances presented here.

## IV.    CONCLUSION

For the reasons stated above, Jackson has failed to state a Section 1983 claim upon which relief can be granted, and because no viable federal claim remains, this Court has declined to exercise jurisdiction over the remaining common law claims. Consequently, and as set forth in the Order this Court issued on March 29, 2019, the Private Defendants' motion to dismiss Jackson's amended complaint has been **GRANTED**, and the Public Defendants' request for dismissal of Jackson's claims has been **GRANTED** as well.  Furthermore, in light of the disposition of the Defendants' motions to dismiss, Jackson's motion for summary judgment has been **DENIED AS MOOT**.


DATE:  May 3, 2019                      *Ketanji Brown Jackson*
                                        KETANJI BROWN JACKSON
                                        United States District Judge